UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

AARON B.[1],                                     )
                                                 )
                    Plaintiff,                   )
                                                 )
          v.                                     )          No. 1:23-cv-01773-RLY-KMB
                                                 )
MARTIN J. O'MALLEY,                              )
                                                 )
                    Defendant.                   )

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Aaron B. applied for disability insurance benefits on April 1, 2021, from the Social Security Administration ("SSA"), alleging an onset date of July 1, 2019.  [Dkt. 7-5 at 2.]  His application was initially denied on August 17, 2021, [dkt. 7-4 at 9], and on reconsideration on February 10, 2022, [*id.* at 16].  Administrative Law Judge Gladys Whitfield (the "ALJ") conducted a hearing on December 13, 2022.  [Dkt. 7-2 at 18.]  The ALJ issued a decision on February 23, 2023, concluding that Aaron was not entitled to receive disability insurance benefits.  [*Id.* at 18-27.]  The Appeals Council denied Aaron's request for review on August 11, 2023.  [*Id.* at 2-4.]  On October 2, 2023, Aaron timely filed this action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).  [Dkt. 1.]  This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motion.  For the reasons detailed

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

herein, the Magistrate Judge recommends that the District Judge **AFFIRM** the Commissioner's decision finding that Aaron was not disabled.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).[2]  The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id*.  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects.  Cases may reference the section pertaining to disability insurance benefits, such as *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000), which cites 20 C.F.R. § 404.1520.  Generally, a verbatim section exists establishing the same legal point with both types of benefits.  The Court will take care to detail any substantive differences that are applicable to the case.

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.  RELEVANT BACKGROUND[3]

Aaron was 49 years old when he applied for disability insurance benefits.  [Dkt. 7-5 at 2.] He has a high school education and previously worked as a warehouse worker and a meat stock clerk.  [Dkt. 7-2 at 36-37, 39.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4) and concluded that Aaron was not disabled.  [*Id.* at 18-27.]  Specifically, the ALJ found as follows:

- At Step One, Aaron had not engaged in substantial gainful activity since July 1, 2019, the alleged onset date.  [*Id.* at 20.]

- At Step Two, Aaron had the following severe impairments: heart failure and cardiomegaly.  [*Id.*]

- At Step Three, Aaron did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [*Id.* at 21.]

- After Step Three but before Step Four, Aaron had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; no more than occasional exposure to wetness and industrial vibration; avoid all use of hazardous moving machinery and exposure to unprotected heights; and no job where driving or operating motorized vehicles is required to perform functions of the job."  [*Id.*]

- At Step Four, relying on testimony of the vocational expert ("VE") and considering Aaron's RFC, Aaron was not capable of performing any past relevant work.  [*Id.* at 24.]

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

- At Step Five, relying on VE testimony and considering Aaron's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that Aaron could have performed through the date of the decision. [*Id.* at 25-26.]

### III. DISCUSSION

Aaron sets forth two issues for the Court's review: (1) whether the ALJ erred in conducting a subjective symptom analysis under SSR 16-3p and (2) whether the ALJ failed to incorporate the requirement that Aaron elevate his legs to reduce swelling into his RFC. The Court will address each of these issues in turn.

### A. Subjective Symptom Analysis

Aaron argues that the ALJ improperly equated his ability to perform daily tasks such as mowing the lawn, driving a car, preparing meals, handling finances, and generally living independently with the ability to perform full-time work. [Dkt. 9 at 15.] He further argues that the ALJ did not acknowledge certain limitations on his ability to perform these daily tasks, such as the fact that his daughter provides him with significant support, that it takes him two days to mow the lawn, and that he spends most of the day in a recliner or bed with his feet elevated to reduce swelling in his legs. [*Id.* at 15-17.] He argues that the ALJ improperly relied on improvement in his condition in finding that that his symptoms were not as severe as he claims. [*Id.* at 17-18.] Finally, Aaron argues that the ALJ improperly discredited his claims about the severity of his illness due to his daily marijuana use. [*Id.* at 20.]

In response, the Commissioner argues that the ALJ did not equate Aaron's daily activities with full-time work but instead considered the record as a whole and properly found that his claims about the severity of his condition were inconsistent with his ability to perform these daily tasks. [Dkt. 11 at 8.] He argues that the ALJ explicitly considered evidence about some of the limitations on Aaron's ability to perform daily activities, such as his need to take breaks when he mows the

5

lawn, and that the ALJ was not required to set forth each and every limitation in the written opinion. [*Id.* at 8-9.]  With respect to the improvement of Aaron's condition, the Commissioner acknowledges that improvement alone is not dispositive to a disability determination but argues that in this case, the ALJ properly relied on medical records showing that Aaron's condition "was not just well-controlled but also *asymptomatic*." [*Id.* at 10 (emphasis in original).]  He also argues that the ALJ properly found that Aaron's marijuana use undermined his claims that he experiences shortness of breath. [*Id.* at 10-11.]  Ultimately, the Commissioner argues that the record supports the ALJ's subjective symptom analysis and that Aaron's arguments amount to an improper request for this Court to reweigh the evidence. [*Id.* at 7-8.]

Aaron replies that the ALJ pointed only to medical records that indicated a lack of swelling, that she "ignore[ed] the waxing and waning nature of his swelling," and that "it is reasonable that there were days he saw his doctors that he did not exhibit edema because he spent most of his days laying down, and perhaps did not go far to see his doctor." [Dkt. 13 at 2.]  He analogizes the ALJ's reliance on his marijuana use to previous cases holding that such inferences are improper for disability claims brought by cigarette smokers with respiratory illnesses. [*Id.* at 2-3.]

When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process.  First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3.  Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*  The ALJ will not evaluate an individual's symptoms

based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including (but not limited to) the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The court must afford the ALJ's determinations special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Applying this standard to the present case, the ALJ found that Aaron's medical conditions could reasonably be expected to cause his alleged symptoms but that Aaron's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. [Dkt. 7-2 at 22.] She noted that Aaron went to the emergency room in July 2019 for chronic, severe swelling in his legs. [*Id.*] He had not seen a doctor in about twenty years, and following this hospitalization, he began seeing a primary care provider on a regular basis. [*Id.*] While financial circumstances and a lack of insurance coverage foreclosed certain care recommendations, such as treatment at a heart failure clinic, Aaron received some care, his condition continued to improve, and the record did not show that he required additional emergency room care or more frequent or intensive treatments. [*Id.* at 22-23.] She found that "[a]lthough edema is noted intermittently, specifically in 2019, the records show generally the claimant denying having edema, and no edema noted on examination." [*Id.* at 23.] Further, she noted that in October 2022, his doctor reported that his heart condition, which is the source of the swelling in his legs, was asymptomatic. [*Id.*]

Given the substantial deference afforded to an ALJ's credibility determinations, the Court finds that the ALJ's subjective symptom analysis in this case was not "patently wrong" and does not provide a basis for reversal. The ALJ did not equate Aaron's daily tasks with full-time work;

instead, she merely noted that his daily activities "are not as limited as one would expect given [his] complaints of disabling symptoms and limitations." [*Id.*] While "there are limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms," such as by equating daily activities with full-time work, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) (holding that the ALJ's finding that the claimant's gardening was inconsistent with her complaints of pain was reasonable). The ALJ acknowledged some limitations on Aaron's daily activities, such as the fact that he had to take breaks while mowing the lawn, and she was not required to list each and every such limitation in her written opinion. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) ("the ALJ's failure to mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal.").

The ALJ did not rely solely only on Aaron's daily activities in finding him not disabled; rather, she also considered his medical records, which generally showed no swelling in his legs during medical appointments. [Dkt. 7-2 at 23 (citing dkt. 7-7 at 232, 248, 288, 369-70, 389).] Aaron's argument that he may not have had swelling at these appointments "perhaps [because] did not go far to see his doctor," is mere speculation that is not supported by the record and does not provide a basis for reversal. Aaron's medical records, which generally showed a lack of swelling in his legs and that his heart condition had not only improved but was asymptomatic in October 2022, in conjunction with his ability to perform a wide range of daily activities with some limitations, provided the ALJ with a reasonable basis to conclude that the intensity, persistence, and limiting effects of his condition were not as severe as he claimed.

To the extent the ALJ erred by also considering Aaron's daily marijuana use in conducting the subjective symptom analysis, such error would be harmless because the ALJ identified other inconsistencies—*i.e.*, Aaron's reported daily activities and medical records—that were sufficient by themselves to discredit Aaron's claims.  *See Karr*, 989 F.3d at 513 ("But if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required.").  "[T]he ALJ's credibility determination need not be flawless," *Similia v. Astrue*, 573 F.3d 503, 517 (7th 2009), and will be sustained on review despite isolated errors, *see Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("not all of the ALJ's reasons must be valid as long as *enough* of them are.") (emphasis in original); *Walcott v. Berryhill*, 2019 WL 2494165, at *8 (S.D. Ind. Feb. 5, 2019) ("Even if this court were to hold that the ALJ should have expressly addressed Plaintiff's activities, any error was harmless because the ALJ provided other reasons for discounting Plaintiff's subjective complaints.").

In sum, the ALJ's subjective symptom analysis was not "patently wrong" and does not warrant reversal.  She did not equate Aaron's daily activities with full-time work but merely found that they were inconsistent with the alleged severity of his reported symptoms.  She also relied on his medical records, which she reasonably found were inconsistent with his testimony about chronic swelling in his legs.  To the extent the ALJ was wrong to consider Aaron's daily marijuana use, this error would be harmless because she identified other sufficient reasons in addition to his marijuana use to discredit his claims.  For these reasons, the Magistrate Judge recommends that the District Judge affirm the decision on this issue finding that Aaron was not disabled.

## B.  Residual Functional Capacity

At the hearing, Aaron testified that after being on his feet for thirty minutes at a time, he needs to lie down and elevate his legs for three to four hours to reduce the swelling.  [Dkt. 7-2 at

39-40.]  His primary care provider recommended that he elevate his legs twice daily.  [Dkt. 7-7 at 413.]  Aaron argues that the ALJ erred by failing to incorporate these elevation requirements into his RFC.  [Dkt. 9 at 20-21.]

The Commissioner responds that the ALJ did not incorporate these elevation requirements into Aaron's RFC because she reasonably determined that the swelling in his legs had resolved and that his heart condition was asymptomatic.  [Dkt. 11 at 10.]  He also argues that even if Aaron was required to elevate his legs twice daily, as his medical records suggest, he has not shown why he could not do so outside of work.  [*Id.* at 10 n.1.]

Aaron does not address the Commissioner's arguments or further address this issue in his reply brief.  Courts in this Circuit construe such an omission as an abandonment of the argument.  *Debra B. v. Kijakazi*, 2022 WL 1541335, at *5 (N.D. Ill. May 16, 2022) (collecting cases).  Further, as explained in addressing the first issue above, the ALJ reasonably discredited Aaron's claims about the severity of his symptoms and was not required to incorporate his testimony claiming that he needs to elevate his legs for three to four hours after being on his feet for thirty minutes into his RFC.  Finally, Aaron has not explained why he could not comply with his primary care provider's recommendation to elevate his legs twice daily outside of work.  For these reasons, the Magistrate Judge recommends that the District Judge affirm the decision on this issue finding that Aaron was not disabled.

## IV.  CONCLUSION

The standard for disability claims under the Social Security Act is stringent.  *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018).  "The Act does not contemplate degrees of disability or allow for an award based on partial disability."  *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)).  "Even

claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision finding that Aaron was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. **Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

   **SO RECOMMENDED.**

 Date: 7/8/2024

         Kellie M. Barr
         United States Magistrate Judge
         Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email